CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED for RKU

MAY 04 2012

JULIA C. DUDLEY, CLERK
BY: H.McDonald
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **ROBERT EARLE RAMBO,** | ) | Civil Action No. 7:12-cv-00034 |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **DIRECTOR, DEPARTMENT OF** | ) | **By:   Hon. Jackson L. Kiser** |
| **CORRECTIONS,** | ) | **Senior United States District Judge** |
| **Respondent.** | ) | |

Robert Earle Rambo, a Virginia inmate proceeding pro se, filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Petitioner argues that ineffective assistance of counsel and error by the Court of Appeals of Virginia caused his unlawful conviction. Respondent filed a motion to dismiss, and petitioner responded, making the matter ripe for disposition. After reviewing the record, I grant respondent's motion to dismiss and dismiss the petition.

I.

A.

A jury in the Circuit Court of the City of Lynchburg ("Circuit Court") found petitioner guilty of second-degree murder, use of a firearm in the commission of a murder, and discharging a firearm in an occupied building.[1] The Circuit Court sentenced petitioner on April 14, 2006, to, inter alia, forty-three years' imprisonment. The Court of Appeals of Virginia affirmed the convictions, and the Supreme Court of Virginia refused petitioner's petition for appeal on September 24, 2008.

Petitioner filed a state habeas petition with the Circuit Court on September 23, 2009. Petitioner argued five grounds for relief:

---

[1] The jury acquitted petitioner of burglary while armed with a deadly weapon and using a firearm while committing burglary.

(1) Counsel failed to reasonably and adequately cross-examine and impeach key Commonwealth witness Joseph Johnson, Jr., particularly by proper utilization of Johnson's material contradictions between his trial testimony and his prior testimony to a special grand jury;

(2) Counsel unjustifiably prejudiced petitioner by introducing into evidence the otherwise-inadmissible and highly prejudicial out-of-court statements of Melissa Burgess by failing to have apprised himself of the controlling law regarding redaction of statements and by failing to have thereupon moved the trial court to redact the prejudicial otherwise-inadmissible portions of the statements;

(3) Counsel failed to move to withdraw upon being exposed as having knowingly and intentionally misrepresented to the jury and the court the content of the highly prejudicial out-of-court statements of Melissa Burgess, having thereby put himself in jeopardy of being held in contempt of court and thereafter refrained from arguing the well-established law in Virginia that such statements may be appropriately redacted upon request and failed to inform and discuss with petitioner the conflicts of interest;

(4) On January 19, 2005, counsel failed to object to the Circuit Court's failure to fully, fairly, and accurately instruct the jury as to the law regarding malice and heat of passion, and counsel failed to request correct jury instructions on this matter; and

(5) After the jury's January 19, 2005, verdicts on guilt or innocence, counsel failed to move to set aside the jury's guilty verdicts on the ground that those verdicts were impermissibly inconsistent and that the combination of all five verdicts necessitated the unsustainable conclusion that the petitioner had malice but there had been no "intent to commit murder or involuntary manslaughter" and no "specific intent to kill."

On April 22, 2011, the Circuit Court determined petitioner did not receive ineffective assistance of counsel and dismissed the petition. Petitioner appealed to the Supreme Court of Virginia, which refused the appeal on October 27, 2011, and dismissed a petition to rehear on January 19, 2012, as untimely.

Petitioner filed the instant petition on January 19, 2012, and amended the petition on February 6, 2012, to include an affidavit and letters to support petitioner's second federal habeas claim. Petitioner's federal claims (1) through (4) are the same claims (1) through (4) presented to the Supreme Court of Virginia during habeas review. Petitioner's federal claim (5), which

2

petitioner presented to the Supreme Court of Virginia during direct review, argues:

> (5) The Court of Appeals erred in affirming the trial court's decision to decline to dismiss the indictment when a purpose of the special grand jury had been to compel testimony which could not be compelled because it exceeded the scope of the special grand jury's powers and impermissibly sought to compartmentalize the testimony without cross-examination.

B.

The Circuit Court reviewed the trial record and recited the following facts to support the dismissal of petitioner's state habeas petition. See 28 U.S.C. § 2254(d) (mandating deferential review of state court's determination of facts); Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) (holding that a federal court can rely on a reasoned state court judgment resting primarily on federal law when later unexplained state court orders uphold that judgment); Jones v. Murray, 947 F.2d 1106, 1110 (4th Cir. 1991) (stating written findings of historical fact by the state court are presumed to be correct and entitled to deference unless shown to be erroneous).

> On the evening of July 1, 2005, Robert Rambo and his long-time girlfriend and mother of his three children, Melissa Burgess, had an argument over the fact that Rambo would have to work on July 3rd. Afterward Burgess left for her mother's house to calm down.

> While Burgess was at her mother's house, her brother, Joseph Johnson, also known as "Buddy," came by with his friend Anthony Keith Nance. Burgess agreed to go out with Johnson and Nance to have a few drinks. Meanwhile, Rambo stayed at home with their children.

> Burgess, Johnson and Nance left in Nance's work van, with Melissa in the front passenger seat, Nance driving and Johnson sitting on a cooler in the back. They first went to Rub's, where Johnson and Nance drank beer and Melissa had "Blue Motorcycles," a drink consisting of four different kinds of liquor. They stayed there about an hour, and, according to Johnson's trial testimony, Nance and his sister were talking and having a good time.

> At the second bar, Marilyn's, they all drank beer because no liquor was served there. . . . At Marilyn's, Nance told Melissa she had pretty hair and began to stroke her hair; Melissa thanked him and did not appear upset.

3

They next went to O'Charley's restaurant where they drank more mixed drinks; Johnson testified that he and Nance drank tequila and his sister Melissa "was drinking Blue Motorcycles." They sat in a booth at O'Charley's until about 2:00 a.m.; Nance and Burgess sat together on one side of the booth and appeared to be getting along "real good" and were "hugging and talking." According to . . . Ratliff, the bartender at O'Charley's, Burgess and Nance were "very close together," and were laughing and talking and drinking Blue Motorcycles. Johnson said to Ratliff, in Burgess' and Nance's presence, that they were going to get a room, and Burgess had no negative reaction to that comment.

At 2:00 a.m. when the bar closed, Nance, Burgess, and Johnson went out to Nance's van. They joked about going to the beach before Johnson crawled into the back of the van and fell asleep.

Jeff Troy, the night manager at the Best Western Motel in Lynchburg, testified that Keith Nance checked into the motel about 3:00 a.m. on July 2, 2005, leaving a photocopy of his driver's license and his name and address with Troy. When Nance checked into the motel, he was away from his van for five minutes. When asked whether he wanted a smoking or non-smoking room, Nance thought for a minute and said "she may want to smoke, a smoking room." Troy then rented Nance Room 301, the room closest to the office.

Sometime later on, Johnson was awakened in the back of the van by Burgess and Nance, who played a trick on Johnson by telling him they were at the beach. However, Johnson quickly realized they were joking when he looked around and noticed the sign for a familiar Lynchburg restaurant, Myrt's. Johnson testified that his sister Melissa and . . . Nance both appeared to be in a good mood, and that she did not appear upset or nervous. They all went inside the room, where Johnson saw that "the covers were all messed up on the first bed to the right." They sat down, drank some beer and smoked some cigarettes. Nance's and Burgess's DNA were later identified on some of the beer cans and cigarette butts left in the room.

A short time later, Burgess' cell phone rang, and she became very frightened and said that Rambo knew where she was. She said she wanted to go . . . and she left the motel room. Johnson decided to go to sleep.

According to Jeff Troy, a few minutes later, Rambo pulled up and parked in the middle of the motel parking lot. Troy heard him yelling at Melissa Burgess, saying "which room is he in"; Troy stated it "seemed like she was trying to calm him down." Ultimately, Rambo and Burgess went to Room 301 where Nance and Johnson were. Rambo put his thumb over the peephole and began to bang on the

door.  When no one answered, he had Burgess come over to the door to call for her brother to open the door. . . .

Johnson testified that about fifteen minutes after Melissa left the room, someone was "banging on the door."  Keith Nance started to go to the door, but Johnson told him "to let it go" because he knew it was probably Rambo.  Johnson looked out the peephole, but Rambo had his thumb over the hole.  When Burgess then called "Buddy, Buddy, Buddy" through the door, Johnson thought that his sister was in trouble from Rambo, and he opened the door for her.  She came in with a "frightful look on her face" and Rambo came in behind her.

Rambo was armed with a .380 caliber semiautomatic pistol and went straight over to the bed and fired three shots at Nance as he lay on the bed.  Johnson stated that Nance "didn't know what was going on.  He leaned up out of his sleep when he—maybe after the first shot about six to twelve inches.  And the last word to come out of his mouth . . . was wha [sic] and that's it."  Johnson testified that Rambo "went right between . . . my sister and me, and went over to that bed and shot Keith laying right there in cold blood."

One shot went into Nance's left thigh and out again, then up the shaft of his penis, through his bladder, finally stopping in his back.  Another shot entered the outside back portion of Nance's left thigh and exited through the front.  The third bullet, which was rapidly lethal, struck Nance in the heart.

Johnson thought Rambo was going to kill him as well, so he ran out of the room and hid.  Rambo took Burgess to the Lynchburg General Hospital emergency room and reported to the nurse on duty that Burgess had been raped.  Hospital security called the police and Rambo was later arrested by Lynchburg police at the hospital.  Burgess was examined by a . . . forensic nurse examiner at the hospital who had received SANE training [and] . . . found that Burgess had no injuries associated with rape.

The gun was never found; Rambo later testified at his trial that he tossed the gun into a railroad coal car on his way to the hospital with Burgess.

Rambo v. Dir. of the Dep't of Corr., No. CL09004085, slip op. at 2-5 (Va. Cir. Ct. Apr. 22, 2012) (record citations omitted).

## II.

A federal court may grant habeas relief from a state court judgment "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United

States." 28 U.S.C. § 2254(a).  A federal court may grant a habeas petition for any claim that the state court adjudicated on the merits only if the state court decision was contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts.  28 U.S.C. § 2254(d).

The evaluation of whether a state court decision is "contrary to" or "an unreasonable application of" federal law is based on an independent review of each standard.  Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  A state court decision is "contrary to" federal law if the decision "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts."  Id. at 413.  A failure to cite established United States Supreme Court precedent does not render a decision "contrary" to federal law.  Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A federal court may issue the writ under the "unreasonable application" clause if the federal court finds that the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Williams, 529 U.S. at 413.  This reasonableness standard is an objective one.  Id. at 410.

A federal court reviewing a habeas petition "presume[s] the [state] court's factual findings to be sound unless [petitioner] rebuts 'the presumption of correctness by clear and convincing evidence.'"  Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. § 2254(e)(1)).  See, e.g., Lenz v. Washington, 444 F.3d 295, 300-01 (4th Cir. 2006).  "A state-court factual determination is not unreasonable merely because the federal habeas court

would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. ___,

130 S. Ct. 841, 849 (2010).

A.

To support claim (2), petitioner supplemented the petition with letters and an affidavit

from B. Leigh Drewry, Jr., an attorney who represented Burgess during the police investigation.

Drewry avers that he spoke with the prosecutor after petitioner's conviction and that the

prosecutor told Drewry that counsel:

> [D]id not thoroughly read or did not read [Burgess'] special grand jury testimony.
> If [counsel] had, [counsel] would have known about [Burgess'] testimony
> concerning [petitioner]'s prior conviction of a crime involving violence. [The
> prosecutor] went on to tell me[,] had [counsel] come to him prior to trial and
> requested a redaction of [Burgess'] testimony regarding the prior offense[,] he
> would have agreed. He took this position because it was his understanding, and I
> agree, the prosecution could not introduce prior crimes evidence in the trial of the
> pending charge. However, [the prosecutor] believed if the defense did not take
> steps to prevent such evidence from coming in and the prosecution did not
> introduce it, then it was admissible.
>
> Based upon my education and experience, I am of the opinion [counsel] did not
> comply with the minimum standards of a criminal defense attorney practicing
> before the bar of the Lynchburg Circuit Court in that he failed to properly and
> completely review the special grand jury testimony of [Burgess]. He further failed
> to secure a court ruling redacting the special grand jury testimony concerning
> [petitioner]'s earlier conviction[2] prior to trial.

(Drewry Aff. (no. 5-1) 2.)[3]

Petitioner did not present the letters, which are dated December 6, 2005, and September

19, 2011, or the affidavit, which is dated January 31, 2012, to the Circuit Court or the Supreme

Court of Virginia during state habeas proceedings that occurred between September 23, 2009,

---

[2] Burgess' special grand jury testimony does not describe a conviction. She testified that petitioner's father "had said something about a misdemeanor." (Jan. 18, 2012, Tr. Tran. 231.)

[3] Drewry concludes the affidavit with conflicting statements. He believes counsel's "actions constitute ineffective assistance of counsel as set out in Strickland v. Washington," but he has no opinion "as to the prejudice element of Strickland."

and January 19, 2012. "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. ___, 131 S. Ct. 1388, 1398 (2011). "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." Id. at 1400. Petitioner's failure to present the evidence to the Circuit Court and the Supreme Court of Virginia precludes my consideration of the same evidence. Accordingly, I will not consider the letters and affidavit to adjudicate claim (2).

B.

Petitioner's claims (1) through (4) allege that counsel provided ineffective assistance, in violation of the Sixth Amendment. For the reasons that follow, petitioner fails to establish that the Circuit Court's denial of claims (1), (2), (3), and (4) is contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts.

1.  Claim (1)

Petitioner argues in claim (1) that counsel failed to reasonably and adequately cross-examine and impeach Commonwealth witness Joseph Johnson. Johnson's testimony before the grand and petit juries varied between whether the victim was asleep or getting ready to sleep just before the killing and whether the victim rose up twelve inches from the bed before or after the first gunshot. Petitioner argued that counsel should have exploited the inconsistencies because "[t]he difference between shooting a sleeping person and an awake person who has started to come toward you" is an important factor for the jury to determine malice. Petitioner argued that

8

counsel's error prejudiced him by preventing the jury from either acquitting petitioner or finding petitioner guilty of voluntary manslaughter instead of second-degree murder.

The Circuit Court concluded that prejudice did not exist because the discrepancies in testimony were immaterial.  The Circuit Court explained that the evidence, including petitioner's testimony, "clearly establish that the petitioner repeatedly shot, at close range, a man who was lying in bed, who the petitioner knew was unarmed, and who obviously presented no threat whatever to the armed petitioner as he stood over [the victim]." Rambo v. Dir. Dep't of Corr., slip op. at 7.  The Circuit Court also discussed other facts establishing malice, including petitioner yelling at Burgess to disclose the location of Nance's room; covering the peep hole to gain entry into the room; and shooting the victim in the penis and heart from a few feet away.

2. Claim (2)

Petitioner alleges in claim (2) that counsel was ineffective by introducing Burgess' "otherwise-inadmissible and highly prejudicial out-of-court statements. . . ."  At petitioner's trial, Burgess invoked the Fifth Amendment privilege against testifying, and counsel read Burgess' testimony from the special grand jury into the trial record.[4]  Petitioner argues that Burgess' testimony about a prior shooting incident were inadmissible; should not have been disclosed; and violated the rule against the admission of "other crimes" evidence.

The transcript revealed that Burgess testified how she, petitioner, and their three children had a satisfying, loving home life after she and petitioner lived together for fifteen years.  Burgess described petitioner as the sweetest, kindest, and gentlest man she had ever met and how petitioner once saved a child from choking at a restaurant.  Burgess also described how Nance

---

[4] To read the testimony during petitioner's trial, counsel acted as the prosecutor at the special grand jury, and counsel's secretary acted as Burgess.

grabbed Burgess by the back of the head; threw Burgess down on the bed; pulled down Burgess'

top and panties; continued to attack Burgess despite protests that she was married; thought that

Nance raped her but was not absolutely sure; and that Burgess told petitioner on the phone before

petitioner arrived at the hotel that Nance had raped her.  Burgess testified that she heard two

weeks before the murder that Nance attacked a girlfriend by smothering her with a pillow,

breaking her ribs, blackening her eyes, and putting her in the hospital.

 While reading the transcript, counsel omitted a portion of the special grand jury

testimony discussing a prior shooting incident involving petitioner.  Outside the presence of the

jury, the Circuit Court ruled that counsel could not selectively omit portions of the special grand

jury transcript.  The Circuit Court gave the jury a cautionary instruction at counsel's request,

stating:

> Ladies and gentlemen, in your absence we had an extended discussion about
> a reference or two in the transcript that you're now listening to of prior
> testimony by . . . Burgess under oath.  There are -- the questions make
> reference to a prior shooting that the accused was involved in or -- and I'm
> giving you a cautionary instruction that you're not to consider that question
> or the answer or lack of answer to that question of [sic] evidence of guilt of
> [petitioner] of the offenses for which he's on trial today.  In other words,
> he's being tried today for statutory burglary with intent to commit murder,
> and two firearms charges and discharging a firearm.  This is some reference
> to a prior occurrence.  And I'm telling you, instructing you that this is not
> evidence of guilt of anything for which he is on trial at the present time.
> You understand?  All right.

(Jan. 18, 2006, Tr. Tran. 210-11.)

 Counsel and the secretary continued to read Burgess' special grand jury

testimony in its entirety.  The testimony about the prior shooting incident, a few brief

references in about eighty pages of testimony, revealed that Burgess did not know

petitioner at the time of the alleged prior shooting incident; heard petitioner's father say

something about a misdemeanor; knew nothing about that shooting or its result; and did

not know whether petitioner actually had shot anyone.

The Circuit Court rejected claim (2) because counsel tried to avoid reading into evidence

the facts about the prior shooting incident.  The Circuit Court had overruled counsel's request to

skip over testimony about the prior shooting outside the presence of the jury, but counsel

successfully requested a cautionary instruction to the petit jury.  Furthermore, the Circuit Court

noted that the evidentiary rule of "other crimes" evidence prevents the Commonwealth from

presenting that evidence and concluded that the rule did not apply to defense counsel.  The

Circuit Court concluded that counsel was not deficient and the cautionary instruction cured any

prejudice, especially given the overwhelming evidence of petitioner's guilt.

3.  Claim (3)

Petitioner alleges in claim (3) that counsel failed to withdraw after misrepresenting the

special grand jury testimony described in claim (2).  Petitioner believes that counsel was afraid

of being held in contempt of court for not reading the transcript verbatim and "refrained from

arguing the well established law in Virginia" that counsel could request the testimony about the

prior shooting incident be redacted.  Petitioner further alleged that counsel lied to the Circuit

Court when he said the omission of portions of the transcript was inadvertent because counsel

told petitioner before trial that counsel intended to skip portions of the transcript.

The Circuit Court rejected claim (3) for lacking any factual basis.  The Circuit Court

recognized that counsel admitted outside the presence of the jury that he had overlooked the

references to the prior shooting incident when he examined the transcript before trial.  The

Circuit Court noted that counsel never claimed that he inadvertently skipped over testimony.

11

The Circuit Court determined that no facts indicated that counsel made a pretrial decision to misrepresent the transcript and noted that at no time did the Circuit Court infer or speculate counsel committed an ethical or legal breach. Petitioner could not prove that counsel tempered advocacy in fear of retribution, and the Circuit Court held that no deficient performance or prejudice existed.

4. Claim (4)

Petitioner argues in claim (4) that counsel failed to object to the Circuit Court's improper jury instructions. Petitioner alleges that the instructions: (a) failed to inform the jury that the Commonwealth must prove the absence of heat of passion to convict petitioner of murder, and (b) permitted the jury to infer malice from proof of an unlawful killing. The Circuit Court noted that petitioner failed to proffer an instruction that counsel should have presented and explained that the Commonwealth is required to prove a prima facie case for the presence of malice, not the absence of heat of passion. The Circuit Court instructed the jury that, to find petitioner guilty of first-degree murder, the jury must find that the Commonwealth proved beyond a reasonable doubt that petitioner killed Nance either during a burglary or maliciously, willfully, deliberately, and with premeditation. (Jan. 19, 2006, Tr. Tran. 10.) The Circuit Court further instructed that the jury could find petitioner guilty of second-degree murder if the Commonwealth did not prove beyond a reasonable doubt either that petitioner committed a burglary or that the killing was willful, deliberate, or premeditated. The Circuit Court gave the following instruction about voluntary manslaughter:

> If you find that the Commonwealth has failed to prove beyond a reasonable doubt that the killing was in the commission of burglary and you further find that the Commonwealth has failed to prove beyond a reasonable doubt that the killing was malicious, but you do find that the defendant killed . . . Nance and further that the

12

killing was a result of an intentional act and that the killing was committed while in the sudden heat of passion upon reasonable provocation[,] then you shall find the defendant guilty of voluntary manslaughter. . . .

(Id. 11-12.)

The Circuit Court explained in its habeas opinion that the "instruction made it abundantly clear that heat of passion excludes malice when the heat of passion arises from reasonable provocation" and that "if the Commonwealth proves malice, it necessarily has proven the absence of heat of passion as a matter of law." Rambo v. Dir. Dep't of Corr., slip op. at 17 (original emphasis). The Circuit Court concluded that claim (4)(a) failed because the jury instruction correctly stated the law and because counsel was not deficient for not requesting a different instruction.

The other jury instruction petitioner challenges is, "Once the Commonwealth has proved there was an unlawful killing, then you are entitled to infer that it was malice and that the act was murder in the second degree, unless from all the evidence you have a reasonable doubt as to whether malice existed." (Jan. 19, 2006, Tr. Tran. 13.) Petitioner argues that this language permitted the jury to infer malice simply upon proof of an unlawful killing, obviating the Commonwealth's burden to prove malice. The Circuit Court held, however, that the instructions' permissive language did not violate due process because a jury could conclude that the Commonwealth failed to prove malice. Consequently, the Circuit Court determined counsel was not ineffective for not objecting to the instruction or that prejudice resulted.

5.   Petitioner fails to establish that the Circuit Court denied his habeas petition based upon a contrary or an unreasonable application of clearly established federal law or an unreasonable determination of facts.

A petitioner claiming ineffective assistance of counsel must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984).  The first prong of Strickland requires a petitioner to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[,]" meaning that counsel's representation fell below an objective standard of reasonableness.  Strickland, 466 U.S. at 687-88.  The second prong of Strickland requires a petitioner to show that counsel's deficient performance prejudiced him by demonstrating a "reasonable probability that, but for counsel's errors, the result of the proceeding would have been different."  Id. at 694.  "A reasonable probability is a probability sufficient to undermine the confidence of the outcome."  Id.

If a petitioner has not satisfied one prong of the Strickland test, a court does not need to inquire whether he has satisfied the other prong.  Strickland, 466 U.S. at 697.  "[A]n attorney's acts or omissions that are not unconstitutional individually cannot be added together to create a constitutional violation."  Fisher v. Angelone, 163 F.3d 835, 852-53 (4th Cir. 1998).  Strickland established a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689.  "Judicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight . . . and to evaluate the [challenged] conduct from counsel's perspective at the time."  Id.  "[E]ffective representation is not synonymous with errorless representation."  Springer v. Collins, 586 F.2d 329, 332 (4th Cir. 1978).

14

Petitioner is not entitled to relief because he fails to establish that the Circuit Court's denial of claims (1), (2), (3), and (4) is contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of facts. Petitioner fails to establish how any alleged deficient performance creates any probability that the result of the trial would have been different. The evidence describes how petitioner arrived at the hotel, yelled at Burgess to disclose Nance's location, covered the peep hole to gain entry into the hotel room, entered the hotel room while armed, and maliciously shot Nance in the thigh, penis, and heart while Nance was unarmed and lying on a bed.

Any cross examination of Johnson about inconsistencies with Johnson's grand jury testimony would not have refuted the evidence of malice or supported petitioner's self-defense claim. A cross examination requires "counsel [to] . . . decide what questions to ask and how much time to spend on a particular witness. These are precisely the types of tactical decisions a court is not supposed to second guess." Higgs v. United States, 711 F. Supp. 2d 479, 515 (D. Md. 2010) (citing Byram v. Ozmint, 339 F.3d 203, 209 (4th Cir. 2003)). See Barnes v. United States, 859 F.2d 607, 608 (8th Cir. 1998) (finding direct and cross-examination techniques are matters of trial strategy left to the discretion of counsel).

Petitioner has not demonstrated that he suffered any prejudice by having Burgess' grand jury testimony read in its entirety, including those portions about petitioner's involvement in a prior shooting. Evidence of a defendant's prior bad act is inadmissible for the purpose of proving the accused committed or likely committed a charged crime. Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970). See United States v. McBride, No. 10-5162, 2012 U.S. App. LEXIS 8108, at *23-24, 2012 WL 1384487, at *8-9 (4th Cir.

2012) (noting that the admissibility of prior bad act evidence under Fed. R. Evid. 404(b) is determined by being reliable and relevant and probative to the elements of charged crime without being unduly prejudicial).  The Commonwealth did not introduce the testimony, and counsel's recitation of the testimony was not related to proving petitioner killed Nance.  Burgess repeatedly explained she knew nothing about the incident that occurred more than fifteen years earlier, did not know if petitioner actually shot someone, and only heard petitioner's father reference a misdemeanor.  Burgess did not say petitioner was convicted of any crime, but she did explain how petitioner is "the sweetest, kindest person" she has known for fifteen years.  The Circuit Court cured any possible prejudice when it told the jurors that any discussion about the prior shooting incident was not "evidence of guilt of anything for which he is on trial at the present time."  (Jan. 18, 2006, Tr. Tran. 210-11.)

Even if petitioner had the opportunity to cross examine Burgess about the prior shooting incident, he does not explain what favorable testimony would be elicited beyond how Burgess already explained she knew nothing about the incident and that petitioner was a wonderful person.  Petitioner complains that his inability to cross examine Burgess prevented the jury from knowing that petitioner was, in fact, convicted of misdemeanor assault along with the victim of the prior shooting incident.  (Pet'r's Resp. (no. 22) 15.)  Inexplicably, petitioner believes that informing the jury that he was actually convicted of previously shooting someone else would not be as prejudicial as Burgess' testimony that made the prior shooting incident seem like conjecture.  Counsel and petitioner likely realized the resulting prejudice of elaborating on petitioner's involvement with the prior shooting incident because petitioner avoided the issue when testifying, despite the present argument that he was prevented from explaining the

16

misdemeanor charge.  Petitioner also fails to establish that counsel misrepresented Burgess'

special grand jury testimony to the Circuit Court or that a conflict of interest existed.

Petitioner fails to establish counsel's deficient performance about the jury instructions.

The jury instructions about first-degree murder, second-degree murder, and voluntary

manslaughter correctly describe the elements of premeditation and malice needed to determine

the appropriate crime.  See, e.g., Va. Code § 18.2-32, Pender v. Angelone, 257 Va. 501, 504, 514

S.E.2d 756, 757 (1999); Byrd v. Commonwealth, 89 Va. 536, 538, 16 S.E. 727, 728 (1893).

Likewise, the Circuit Court correctly instructed the jurors about malice and the significance of

the jury finding that the Commonwealth failed to prove that petitioner acted maliciously.

Counsel could not make  a valid objection to these instructions.  Therefore, counsel was not

deficient for not objecting to the instructions.  Accordingly, petitioner fails to state sufficient

facts for claims (1) through (4) to establish a claim for federal habeas relief.

### III.

Petitioner argues in federal habeas claim (5) that the Court of Appeals of Virginia erred

by affirming the Circuit Court's decision not to dismiss the indictment.[5]  As analyzed by the

Court of Appeals of Virginia, petitioner specifically argued:

> [Petitioner] states the Commonwealth convened a special grand jury to
> investigate the murder and then compelled . . . Burgess . . . to testify before it by
> granting her immunity after she invoked her Fifth Amendment rights.
> [Petitioner] then states the prosecution brought charges by a direct indictment
> from a regular grand jury.  No preliminary hearing was held[,] and since
> [petitioner] could not participate in the special grand jury proceedings, he did not
> have an opportunity to cross-examine Burgess.  The prosecution did not call
> Burgess at trial and when [petitioner] did so, she invoked her Fifth Amendment
> rights.  [Petitioner] argues this process violated his constitutional rights by
> enabling the prosecution to gain the benefit of Burgess' testimony while

---

[5] Petitioner exhausted this claim by presenting it to the Supreme Court of Virginia during an appeal from the Court
of Appeals of Virginia.

depriving him of an independent opportunity to examine her.

Rambo v. Commonwealth, No. 1117-06-3, slip op. at 5-6 (Va. Ct. App. Apr. 1, 2008).  The

Court of Appeals determined that Virginia Supreme Court Rule 3A:9(b)(1) barred petitioner's

claim.

     A petitioner procedurally defaults a federal habeas claim when "a state court has declined

to consider the claim's merits on the basis of an adequate and independent state procedural rule."

Hedrick v. True, 443 F.3d 342, 359 (4th Cir. 2006).  A state court's finding of procedural default

is entitled to a presumption of correctness, provided two foundational requirements are met.  28

U.S.C. § 2254(d); Clanton v. Muncy, 845 F.2d 1238, 1241 (4th Cir. 1988).  First, the state court

must explicitly rely on the procedural ground to deny petitioner relief.  Ylst, 501 U.S. at 802-03;

Harris v. Reed, 489 U.S. 255, 259-61 (1989).  Second, the state procedural rule used to default

petitioner's claim must be an independent and adequate state ground for denying relief.  Ford v.

Georgia, 498 U.S. 411, 423-24 (1991); Harris, 489 U.S. at 260.  A state procedural rule is

"independent" if it does not depend upon a federal constitutional ruling and "adequate" if it is

firmly established and regularly or consistently applied by the state court.  Yeatts v. Angelone,

166 F.3d 255, 263-64 (4th Cir. 1998).

     At that time, Rule 3A:9(b)(1) stated in pertinent part:

> Defenses and objections based on defects in the institution of the prosecution or
> in the written charge upon which the accused is to be tried, other than that it fails
> to show jurisdiction in the court or to charge an offense, must be raised by
> motion made within the time prescribed by paragraph (c) of this Rule.[6]  The
> motion shall include all such defenses and objections then available to the
> accused.  Failure to present any such defense or objection as herein provided
> shall constitute a waiver thereof.

---

[6] Paragraph (c) required Rule 3A:9(b)(1) motions to be filed before entering a plea and, except for speedy trial or double jeopardy claims, no less than seven days before trial.

18

Rule 3A:9(d) permits a court to relieve a party from the rule's waiver provision for good cause, but the waiver provision is mandatory if good cause is not established.

The Court of Appeals noted that petitioner's specific claim that prosecutorial use of an investigative special grand jury creates defects in the institution of the prosecution involved a case of first impression. To interpret Virginia's statute, the Court of Appeals looked to analogous federal and state rules of criminal procedure and held that petitioner's claim fell within the scope of Supreme Court of Virginia Rule 3A:9(b)(1). Thus, petitioner was required to file a motion at least seven days before trial, but petitioner did not raise the motion until the day of trial and did not ask the Circuit Court to consider the good cause exception. The Court of Appeals of Virginia held that Rule 3A:9(b)(1) procedurally barred petitioner's claim.

Plaintiff fails to establish that Rule 3A:9(b) is not independent of federal constitutional law or has not been regularly or consistently applied by the Virginia Supreme Court. See, e.g., Prieto v. Commonwealth, 283 Va. 149, 721 S.E.2d 484 (2012) (recognizing Virginia long-standing reliance on Rule 3A:9(b) to limit the time and manner of challenges to grand jury proceedings); Bailey v. Commonwealth, 193 Va. 814, 71 S.E.2d 368 (1952) (recognizing that a constitutional right to a fair and impartial grand jury does not mean that there is no limitation of time, mode or circumstance upon a right to object to a grand jury that returned an indictment); Curtis v. Commonwealth, 87 Va. 589, 13 S.E. 73 (1891) ("[I]t is well settled that objections to the mode of summoning a grand jury, or to the disqualifications of particular jurors, must be made at a preliminary stage of the case, that is, before a plea to the merits; otherwise they will be considered as waived unless, indeed, the proceeding be void ab initio."). Therefore, the Court of

Appeals of Virginia dismissed claim (5) because of an independent and adequate state procedural rule, and petitioner procedurally defaulted claim (5).

A court may not review procedurally defaulted claim absent a showing of a fundamental miscarriage of justice or cause and prejudice. Harris, 489 U.S. at 262. The existence of cause ordinarily turns upon a showing of ineffective assistance of counsel, a factor external to the defense that impeded compliance with the state procedural rule, or the novelty of the claim. Coleman v. Thompson, 501 U.S. 722, 753-54 (1991); Clozza v. Murray, 913 F.2d 1092, 1104 (4th Cir. 1990). A court does not need to consider the issue of prejudice in the absence of cause. Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995).

Petitioner argues the cause to excuse the procedural default is that petitioner did not know more than seven days before trial that Burgess would invoke the Fifth Amendment privilege against self-incrimination. However, Rule 3A:9(b) permits untimely motions for good cause, and petitioner failed to invoke the exception. Petitioner's failure to use the exception cannot constitute a fundamental miscarriage of justice, and petitioner does not further describe any cause and prejudice. Accordingly, I dismiss claim (5) as procedurally defaulted.[7]

---

[7] Even if claim (5) was not procedurally defaulted, the Court of Appeals' dismissal of claim (5) based on an interpretation of Virginia law precludes federal habeas relief. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (emphasizing that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). To the extent petitioner relies on Crawford v. Washington, 541 U.S. 36, 50 (2004), to argue a due process violation, no violation of federal law occurred. Crawford and its progeny concern "the principal evil at which the Confrontation Clause was directed[,] . . . the . . . use of ex parte examinations as evidence against the accused." Crawford, 541 U.S. at 50 (emphasis added). See U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him. . . ."). Only petitioner sought Burgess' testimony to aid his defense, and Burgess' prior testimony would not have been evidence at petitioner's trial but for petitioner's request. Petitioner cannot rely on Crawford to entitle him to cross examine his own witness, even if petitioner had not procedurally defaulted claim (5).

20

IV.

For the foregoing reasons, I grant respondent's motion to dismiss, dismiss the petition, and deny as moot petitioner's motion for a hearing.  Based upon my finding that petitioner has not made the requisite substantial showing of a denial of a constitutional right as required by 28 U.S.C. § 2253(c), a certificate of appealability is denied.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to petitioner and counsel of record for respondent.

**ENTER**: This ___4th___ day of May, 2012.

Senior United States District Judge

21